case number twenty one fifty nine forty five the United States of America versus Antwone Sanders oral argument not to exceed twenty minutes per side Mr. Beck you may proceed for the appellant Jared Beck on behalf of Antwone Sanders I would just note that I request five minutes for rebuttal sounds good good afternoon I'll just begin by noting that I know it's a rare opportunity to be able to argue in front of the full court appreciate the court's consideration in this case I know my client does as well I believe at this point I've briefed the case five different times before this court really focusing on the search issues so I'd like to initially begin with the other issue that the panel did not reach the supplemental discovery issue I think this case is about every citizen's right to be free from unreasonable searches and to be able to meaningfully exercise that right when the government seeks to deprive him of his liberty the search of the apartment in this case was based solely on the two controlled buys that are discussed in the search warrant affidavit Mr. Sanders was initially charged in state court with those offenses and with offenses that were related to what was found inside the apartment after the search but when Mr. Sanders pushed for discovery about those controlled buys in a suppression hearing in state court the state declined to provide that information and instead the case was passed to federal prosecutors who indicted him solely based on the evidence found inside the apartment well did you seek that evidence for purposes of your motion to suppress or for purposes of your case at trial it's an interesting question and I believe at that point I was seeking it for both purposes so suppose you were only seeking it for the motion to suppress why wouldn't Armstrong prohibit that because it interpreted the relevant language in particular defense to mean your defense on the merits and not kind of other issues like selective prosecution I understand the question in the initial briefing that was provided to the district court this issue of course was discussed I very specifically noted that yes I was seeking the evidence for purposes of determining the validity of the search warrant but in addition to that I argued that this evidence was actually material to my client's defense at trial in a variety of different ways for one my client made inculpatory statements at the time of his arrest in the apartment the officers that were involved in this search the ones that actually conducted the surveillance the ones that sought the search warrant were the ones that heard my client make these statements particularly with regard to a firearm that led to a five year consecutive sentence that he received his ownership of that firearm their credibility was at issue if we had gone to trial with regard to that statement and I believe that I was entitled to be able to determine whether or not the story that had been told in the search warrant affidavit was in fact accurate I think that would have impacted the jury's consideration of whether or not my client actually made the confession in the way that these officers were claiming so I take your question and I do understand the case that you have cited but I really think in this case it's broader than that but you might have a strong case of materiality if suppression was allowed to be considered for purposes of discovery but I think it's somewhat weaker if we only look at your it's more speculative I would say maybe you have arguments but well the other the other reason of standard of review as well yes your honor the other issue I would note in terms of this information being material the government often relies on the idea of introducing inextricably intertwined evidence as part of a prosecution in this case the only real investigation that occurred were the control buys and so you know without knowing exactly what I would have found it is difficult to say exactly how I would have used it but I had a very strong suspicion based on my review of the search warrant affidavit and the officers that were involved that perhaps there would be some inconsistencies there and I believe that if we had proceeded to trial it may well have been the case that we would have presented the full narrative of what actually occurred and contrast that with the search warrant affidavit to attack the credibility of the officers of course my client wasn't charged with control buys but I think it would have impacted as I said the statements that he made later even the jury's consideration of the statements that were made by those officers based on what they observed. So on the off chance we granted in bank review to look at the fourth amendment question maybe we could talk a little bit about that and maybe just focus on what your key concern is is it you know it's not probable cause to go from apartment house to a drug deal is that where you are is it a staleness issue what's your best argument there? Well we did raise the staleness issue I don't think that's really controlling in this circumstance I think the real issue here is that we just do not have in the search warrant affidavit sufficient evidence to establish a reasonable probability that we're going to find evidence of drug activity at this apartment there's no there's nothing in the affidavit that actually connects Mr. Sanders to this apartment other than a very generalized tip from a confidential informant that very generally just says Mr. Sanders is selling drugs from this location. How do you deal with a case like Upton from the Supreme Court where it was less than that and they said that was probable cause? I would say that in this particular instance in this case I'm not even sure that I agree that the tip that is in the search warrant affidavit actually substantively claims that drug activity is occurring at that location I think we're even more attenuated from it essentially when I read the affidavit it seems to me I mean it seems to me you're going for certainty it's just whether there's a fair probability and then in Upton the Supreme Court emphasizes that even if it's doubtful we should defer to the magistrate because we want judges not police officers determining this stuff and so in Upton the tip was just it didn't even relate to the home it was just that he was going to move the mobile home but that he was buying stolen goods it had nothing to do with the home the only verification the police make there is that the mobile home exists where she says it is and she wasn't even a C.I. and so and they say that's enough for probable cause if that's enough how can this not be enough where he says he's dealing drugs they observe him go come from and go to the house right I think in this case what we have is essentially a tip insisting that a particular individual is engaged in drug activity but they corroborate it right and they put that in the affidavit corroborate the fact that he is a drug dealer and we have never disputed that I think that that is a key point he mentions an apartment he mentions an apartment he does he mentions a specific apartment but he doesn't say anything about having ever been in the apartment having observed any drug activity in that location because he's drug dealing from the apartment yeah that's correct but the C.I. does not at least according to the affidavit the C.I. does not provide any more indication about what is actually occurring inside that residence and it is a private residence and I think that is key in this case back to I think Judge Sutton's question I think the biggest issue here is that we are dealing with a private residence we're dealing with a situation where the officers in this case what distinguishes this from Upton or even Gates right Illinois v. Gates where in that case they just corroborate innocent details and then they go search the house I believe that in this affidavit there is sufficient evidence to corroborate the fact that my client was dealing drugs I do not believe there is sufficient evidence to corroborate the fact that any drug activity was actually occurring at that apartment I think that may be the distinction why does a private residence help you I mean I would think that hurts you like a hotel would help you but private residence sounds like there are fewer people that have what do you mean by private residence helping you I think the fact that it is a private residence helps because we're talking about the area that is most protected under the fourth amendment oh I see explicitly protected in the text of the fourth amendment and we have a situation where these officers search this residence without ever even determining that Mr. Sanders had any real connection to it other than observing him there on two different occasions weeks apart is it necessary to show that he actually resided there I mean there is observation of him doing two drug deals using a car that went from that location that residential location to the drug deal why isn't that enough to show the nexus why do you need to get into whether or not he resides there well I think that when we're talking about a private residence we're talking about the possibility of the government agents searching again the most protected place under the Constitution and we're in a situation where we these officers are not even trying to determine whether or not his vehicle is even registered to this location I mean they're seeing him why is that necessary you've gone from one location to another location to sell drugs not stopping anywhere in between why does it even matter whether he lives there or not doesn't this implicate the protection of the owner of the apartment if the drug dealer doesn't reside in the apartment and he's visited there as a social friend I could have a friend and it's my apartment and I don't know he's dealing drugs and next thing I know I'm the victim of a search warrant search because of a visiting social friend that doesn't have anything to do with residing at the apartment so the interest seeking to be protected by the Fourth Amendment is beyond those attached to the criminal defendant it's to protect the resident of that apartment and the apartment isn't that a part of the underlying policy behind that Fourth Amendment protection? I couldn't agree more Judge Clay I think that is a big part of this case. I think there's a remedy for that in the 1983 suit whereas this is suppression and if that's the case and he just happens to be visiting then he didn't even have standing. But if I'm the owner of the apartment I don't want my apartment torn apart, my privacy rights violated and even my family endangered by an unmitigated unbridled search by law enforcement that's wholly unnecessary if the drug dealer does not reside there. In fact feel free to iterate this conversation. I would not dare your honor. Let me ask you this, does it matter how many times that the suspect goes from the residence to a drug deal? I mean we have two times here. Do you think that if he did it more often that there would be more here to show that there was reason to search this residence? We actually only have one time here that he went. I think there was twice. The first time they showed him going back to the residence, right? And the second time he went both ways. So you have two transactions that are linked to the residence. Is your position that two is not enough? That there needs to be more? My argument regarding the frequency I think would be that here, I mean I do think the distinction between the first control bond and the second is important because the idea is that we're searching that location because we think we're going to find evidence of drugs. The idea is that he's supposedly transporting drugs from the location to the control buys. If the first control buy, if all we see is him returning to that location without ever leaving to go to that place, I don't really think we can draw a fair inference that he's transporting drugs. So there's a one and a half, one and a half really is what you're saying. A fair way to characterize it. What if he's just storing the proceeds of the transaction? I mean that would still be, so he maybe keeps the drugs in his car, he gets the cash, he puts the cash back in the house. And large amounts of cash is still evidence of drug transactions. Right, and the problem in this case is that our search warrant affidavit does not mention anything about the affaint believing that evidence of drug activity or proceeds or anything like that would be found in this particular location. Right, the officer can conclude that from a drug dealer. I mean that's pretty clear from the precedent of the Supreme Court, right? I think that the search warrant affidavit has to provide at least some basis for the magistrate to be able to draw that inference. I don't think that based on the case law in our circuit that a judge can simply say, oh well it's a drug dealer and this is a residence. Then why would Gates and Upton be right? Under that theory Gates and Upton can't be right. Right, in their Supreme Court cases. I'm not sure that I would necessarily agree with that. I think, tell me why not. Tell me why Upton can be right under that theory where there's no evidence, it's someone buying stolen goods, there's no evidence it's at the mobile home, there's no evidence the mobile home is even his and it's an anonymous tip. Right. Every one of these cases is factually distinct. I think that when we're talking about drug activity in particular, I think that we have a line of cases that suggests. So your point was the magistrate couldn't draw the inference. Right. Without some basis. So why couldn't they draw it here where there's more evidence? I'm not sure that I'm fully grasping that question, but I would just say I only have one minute left. I wanted to address a couple of other issues very briefly and in rebuttal I'll talk more about the good faith. Just one question. As you know the affidavit in support of search warrant did not say that the confidential informant was reliable. There was a discovery motion asking that the identity be revealed or information about the confidential informant and that was denied by the district judge. Should the district judge have ruled as to whether providing the information about the confidential informant would have put the confidential informant in jeopardy or in danger, the district court didn't rule on that, didn't address that at all. Even if the court had to examine that issue in camera without the information being spread on the public record. So the law enforcement claims the confidential informant would be, who was not claimed to be reliable, would be jeopardized. Didn't the judge have a duty to rule yes he would be jeopardized so I'm not going to let you see or know who the confidential informant was rather than simply not doing anything? I completely agree with the judge. I've run out of time. I'd like to, Judge Radler has one question and then you'll get your rebuttal. You made the point that these cases are very fact specific and I agree with you. And so it feels like there's two different lines of cases that are maybe getting merged here a bit. One line of cases are the cases where someone's thought to be a drug dealer and there's a decent amount of evidence about that. But the dealing happens away from the home and there's no connection necessarily to the place where the drug dealer is thought to live. So there's a question of is it being a known drug dealer, this is your home and there's drug dealing occurring somewhere else, are we likely to find drugs in the home? But that feels like another line of cases and I feel like that line of cases was pretty heavily relied upon by the majority opinion. There's no, let's go back to Judge Bush's point, it's not clear that this is the person's home. It really doesn't matter. This is a case where there's a direct tie between the dealing and the location because the driver left from the location, sold the drugs, came back to that location twice. Are those different kinds of cases? I do not think that this is a case where the drug trafficking is directly tied to the residence and I do, I appreciate your question about the line of cases about whether or not a drug dealer actually resides somewhere and the majority did rely upon those cases. I think that is the right analysis in this case because we're dealing with a residence. You don't know what residence, your word is residence, we don't know it's this person. The warrant affidavit doesn't say it's the person's residence. Well it is a residence, I guess that's my point and that's Judge Clay's point earlier that this is the area that we're supposed to protect under the Fourth Amendment the most and I think that here when we just reviewed that search warrant affidavit, I don't think it's sufficient to actually establish that nexus to be able to search that location. Maybe his vehicle where the transactions actually took place, that makes more sense to me than the house. I think we need more to be able to invade that interest, that privacy interest that's most protected under the Fourth Amendment. Alright, thank you Mr. Beck. You'll get your full rebuttal. We'll hear from the government. Good afternoon. Good afternoon. May it please the Court, Sophia Vickery for the United States. I'll just start with the search warrant issue. To get a warrant in this case, police submitted an affidavit describing their investigation into drug trafficking involving the Yellowstone Parkway apartment. A neutral and detached magistrate issued the warrant and police reasonably relied on that warrant to execute the search. The issuing judge's determination was entitled to great deference and a review of the allegations in that affidavit confirms that it established a fair probability that there would be evidence of illegal drug trafficking found in the Yellowstone Parkway apartment. Was there an affiant who had observed drug trafficking or any other illegal activity within that Yellowstone Parkway apartment? No, Your Honor. Police themselves did not observe the drug trafficking activity inside the apartment. Nor did any witness observe it. Is that right? We don't know why the CI, the basis of the CI's knowledge for the tip. But the CI was not represented or deemed to be reliable. There's no representation by the affiant that the confidential informant was a reliable confidential informant or had been successfully used in the past. Is that correct? The second part of what you're saying, that there's no statement of the affiant sort of track record, but I don't agree that there aren't indications of reliability found in the affidavit itself. So the CI told police that Mr. Sanders sold heroin and fentanyl from the apartment. Police then independently confirmed that, in fact, Mr. Sanders actively sold heroin and fentanyl. But there was no witness or affiant that had first-hand knowledge or really any knowledge that they professed that they had observed any transaction of the defendant inside the apartment. No transaction of any other illegal activity. Isn't that right? So I don't think that probable cause required that police themselves observe the illegal activity inside the apartment. That wasn't my question, though. I just asked factually, there's no representation. Correct. Factually, the police did not see him selling drugs inside the apartment. So suppose that what happens is that you are having a party and someone comes to your house to that party and leaves the party and goes out, gets in his car, goes and sells drugs, comes back, comes back to your party. Can your house be searched with that information? So I think so, as long as that person is an active drug dealer, right? You are a happy homeowner with no illegal activity on your own. Your house can be completely looked at by a squad of officers just because one of your guests happens to have left a party and gone off and sold drugs and come back. That's a pretty stark statement of Fourth Amendment rights in this country. So probable cause asks about the certainty that evidence would be found in the location. It doesn't focus on the people. I would also like to ask you, though, to modify our question. There was more than one party here. There were one and a half parties at least. So back to my question, does the number of times that the suspect goes from the residence to the drug buy make a difference here? If it was just one time, it would be more like the hypothetical that Judge Moore gave you, but this is more than once. So does that make a difference? Right, I think that that strengthens the probable cause determination. I would add that I think... The half time that Judge Bush is talking about, Mr. Sanders did not leave the house and go sell the drugs and come back. The half time, he just sold the drugs to the confidential informant and then went to the house. And went to the second party. Right, and so I think that supports the inference that he might have brought, for example, proceeds back to the house or equipment, paraphernalia from the drug dealing. The connection remains between the apartment and the drug sales. And I think it's actually more than one and Because the CI actually also said that he was selling drugs from the apartment. So that's at least one additional indication. But he didn't provide any information, foundational information or any other kind of information as to what that statement was based upon. Isn't that right? That's right. He did not provide his basis of knowledge. There are other indications of reliability and veracity in the affidavit. Doesn't Minnesota v. Carter say that house guests don't get 4th Amendment protection? And so if that's the case, they can sue under 1983, meaning the owner of the house. But Sanders wouldn't have a 4th Amendment right in that because he doesn't have standing. I'm not too familiar with the case that you're citing, but that principle makes sense to me, especially given that the 4th Amendment focuses on the place to be searched. Have you ever argued a standing question either in front of the panel or in your briefing here? I don't think I have personally, no. Well, not you. You're representing the United States. I'm sure the government has it right in that the description provided accords with my general understanding of standing. But isn't this a hypothetical question anyway since he's never claimed he was a social guest at this place? Right. And I think looking at, you know, we have to focus on what is in the affidavit and the allegations that are in this affidavit, particularly when viewed holistically and with deference, combine to provide more than enough for probable cause, or at least that the issuing judge is not acting arbitrarily. Let me ask you my question I'd ask the other, your opponent. Does this have to be his residence? Do you have to prove or show probable cause in the affidavit that this was Sanders' residence? No, that's not the theory. I think a probable cause in the affidavit, whether or not he lived there, there's enough in the affidavit. Isn't it true though that in some of the cases where it hasn't been the person's residence, the drug transaction happens pretty close to the residence? Some of our cases, I think Ellison, maybe Miller, I'm not sure I get the names right, but, you know, like you observe somebody leave the house, go 30 feet, drug transaction, go back, don't prove that it's the residence or the person lives there. Here, it's not in the affidavit that he lives there, right? And then he goes out, I don't know how far, I can't remember how far it was that he drives, but does that make a difference that it's not kind of in the general vicinity or on the premises? I don't think so. In some of the cases, it is closer to the place that search and in other places, there's plenty of cases involving cars where the person drives away. That doesn't make a difference for the probable cause analysis, right? We know that when he left the apartment to go sell drugs, the drugs were either in the car. The idea that in some of those cases where you leave the house, you have a bag or you have something that suggests that I'm carrying drugs as opposed to maybe keeping them in the trunk of my car. I mean, here, I don't think there's any indication that he had a container or a bag or anything, right? Right. There's nothing about a container and there are a couple of cases that mention the container, but even in those cases, it's not dispositive. And there are plenty of other cases which don't mention that technical detail and from which an issuing judge could still make the common sense inference that when someone travels directly between a specific location and a drug deal, they're likely using that location. And I would point, for example, to Christian. The en banc majority found that the surveillance there was independently adequate to establish probable cause. That surveillance was not Christian, a third individual who was observed leaving the address to be searched, getting in his car and driving away and police found heroin in his car. The issuing judge in that case was entitled to infer that he had bought the heroin at the address that he had just come from. There was no mention of a container in that affidavit, nor was it, you know, in the driveway or 30 feet away from the house to be searched. Let me ask you about the motion to supplement discovery. That's concerning to me about how that operates and I would like you to explain, to tell me your understanding of what Rule 16 provides for. And if you have any case law, safe through the circuits, that we haven't already discussed that would support a claim that you could not use that discovery in this situation, please provide it. Right. So I think to answer the first part of your question, Rule 16 has kind of these three categories of supplemental discovery. So the item has to be material to preparing the defense and the Armstrong case kind of focuses on materiality as responsive to the government's case in chief. So I think, just to clarify, the controlled buys were not charged in this case. What is charged is the evidence that was found in the search. And how does that fit with our Likens case that talks about materiality and finding evidence that would make a prima facie showing of materiality to the end result? In other words, we're looking at the quantum of proof. And here, if there is discovery available that would vitiate the ability or the correctness of this warrant, wouldn't that wholly and completely change the quantum of evidence in the case if the warrant were not enforceable? Right. So the cases, for example, in Armstrong talk about sort of the sword or the shield theories of how a defendant can defend against the government's case and explains that the materiality is sort of the shield, only the case in chief. And so to the extent that the evidence would support a motion to suppress, that's kind of the sword element, sort of attacking, challenging the government's prosecution of the case. But it doesn't have anything to do with whether or not there actually was a gun in Mr. Sanders' apartment or whether there were drugs that were found there, which is the sort of crux of the government's case in chief. But what about the other circuit courts that have addressed this as well? The Tenth Circuit in Gates, Thomas in the Ninth Circuit, Forrest in the Second Circuit that talk about the ability to use this rule to obtain discovery in pursuit of showing that the warrant is not appropriate. Your Honor, I'm not, candidly, I'm not familiar with the cases from the other circuits on this issue. I am familiar with the Sixth Circuit case law, which I think is consistent with Armstrong and that's a Supreme Court case. Is his argument not consistent with Liken? I understand that's unpublished, but discussing that materiality is defined by the quantum of evidence that will be impacted in the trial, it seems to me from a practical matter, if there is something out there that can allow this defendant to challenge the warrant, then the quantum of evidence, should he be successful, absolutely changes, right? Because you don't have the warrant. It changes, but I think that the distinction is that it's an indirect way to change the quantum of evidence. So it's a way to challenge the government's conduct in prosecuting the case, but it doesn't actually challenge directly the evidence that the government would present in its case-in-chief because again, the controlled by's weren't charged and the CI's identity is not part of the evidence that the government would have submitted in its case-in-chief. Rule 16, the rule itself, these categories of things the defendant is entitled to, it says one of them is the item is material to preparing the defense and the next one is the government intends to use the item in its case-in-chief at trial. And so the former is on its face broader than just the case-in-chief at trial. And I'm sure those words were chosen carefully. So why isn't the scope of this obligation broader than just what the defendant might use at the case-in-chief? But I think material to preparing the defense, that phrase has been interpreted to defend the case-in-chief. So perhaps there's... Who did that interpreting? I think that that's the Sixth Circuit. Well, we have this unpublished opinion. Is that what you mean? I'll refer back to our original brief, but I think address this issue kind of more fully. Let's set aside that precedent. I mean, every word is so carefully considered in the criminal rules. This is clearly broader than just the case-in-chief. It's the defense more generally. So why wouldn't we be looking to the materiality of the information to the defense as a whole, including motions to suppress, as opposed to just what the defendant might use in a case-in-chief? But I think that perhaps the distinction is that this word sort of material to the defense has been narrowly interpreted in the way that we've just been discussing. I guess my question again is by whom? I mean, if the Supreme Court has said that, great. But if we're talking about an unpublished opinion from this court, not terribly persuasive here. Right. So Armstrong talks about Rule 16, and it's in a different context. Someone wanted to make, I think, a wrongful prosecution claim and was explaining that that's exactly kind of the type of claim that attacks sort of the government's prosecution of the case, their conduct of the prosecution, similar to maybe they got an illegal search warrant. But it's not about the charges themselves. And I guess I would contrast this with...  Can I ask to follow up on Judge Kepledge here? Armstrong, as you just said, is not in our suppression context. And we have, as far as I have found, only one unpublished case, the Popa case, here in our circuit. Are you aware of any other circuit that has extended Armstrong to the suppression context? No, Your Honor, but... So we'd be the first court to do that. But I will say that I have not read all of the circuit cases on this supplemental discovery issue. So I hesitate to sort of represent that this would be the first and only without having done a more thorough investigation of that, and I'm happy to submit a letter to this court after argument if that's of interest. What I wanted to mention as well is that I would contrast that rule with what a defendant has to do for a Franks hearing, which is make a substantial preliminary showing that there's something false in the affidavit, which is... This defendant could win, so to speak, on the motion to suppress issue and still not have qualified for a Franks hearing, right? Right. Yes. So then what purchase does the Franks hearing issue have? So I guess I was contrasting it with sort of this broader interpretation of Rule 16, that in challenging a suppression motion, in getting an evidentiary hearing and additional information about what's in an affidavit, et cetera, typically it's done through a Franks hearing, which requires this kind of preliminary substantial showing. But let's assume you didn't have that. Is my memory wrong that case is mentioned in these analysis in some parts and case in chief is referenced in another? And what we're discussing is a reference to case. Is that incorrect? I'm not sure if you mean it in the text of the rule or...  Right. So I think the first kind of sub-part of the rule is material to preparing the defense. And then the second part is if the government intends to use the item in its case in chief. And is material to the defense a very broad ranging right? So our interpretation is no, because the defense in that context is more narrow. It's to sort of the conduct that's charged, the sort of shield theory of defense, rather than the story theory. I'd also note, of course, that there's harmless error. Can I just ask a question? Just so I understand the argument that you're trying to make with respect to Franks. Is what you're getting at that if we were to say that you can use the discovery rule here, it would be subverting the tight limits on your ability to attack the warrant affidavit under Franks? Because under Franks, you have to make a substantial showing in order to even get the Franks hearing. And you don't get discovery in order to make the substantial showing. And so we would be subverting sort of the tight limits that the Supreme Court put on attacking the validity of the warrant in Franks? Is that your point? Yes. And also that sort of the interpretation that I'm suggesting is consistent with other parts of the law and what a defendant has to show to get a hearing on a suppression motion and to get additional evidence, evidentiary hearings, et cetera. Well, I mean, I honestly, I mean, I may just not know the relevant law. But I mean, is it settled law that you can't use Rule 16 information to try to make this substantial showing? No. And that's not what I'm suggesting. I guess I'm saying that if Rule 16 were interpreted extremely broadly to allow... To be what it says here. I mean, anyway, go ahead. I think you were about to go to harmless error, which is what Judge Nalbandian said in his dissent. So maybe this is not a bad time to talk about that. Yes. So the error would certainly be harmless here because the government's proof with respect to the case in chief is quite clear. The defendant has not explained... What error are you referring to? So any error in... Any error. In not providing this discovery, I guess the discovery information. But the dissent there was referencing small three I's, which is what's obtained from or the defendant. That's where the harmless error analysis occurred. We are talking about Section 1 that is material to preparing the defense. It's a different argument. Right. So even under Section 1 though, if like the CI's information or the other... I think that was all that the defendant sought actually, the CI's information and the drugs. The defendant has not explained why or how that would have affected his substantial rights. As I mentioned, the controlled buys were not charged in this case. So to the extent that just supposing that evidence showed that it was in fact not heroin or fentanyl, the affidavit as presented to the issuing judge still established probable cause for the search that took place. How are we supposed to know if the discovery that he would have gotten under maybe a more textualist reading of this rule would have been harmless if we don't know what that discovery is? Right. So the defendant's burden is to show that it affected his substantial rights. I think it's difficult to meet that burden without knowing what it is. I take your point. But he hasn't proposed any kind of theories as to why that would be, even if it turns out that it was all very favorable to the defense. I think his theory is that you have an officer that has a reputation of being unethical. So he wants to see if the underlying reports of the investigation actually match up with the affidavit. That's at least the theory. Not having the reports, not having any of that underlying material would obviously make it difficult to prove that theory. But he has a theory. Right. So I think that would go to the Frank's hearing idea that he would need to make that sort of substantial preliminary showing to hold the Frank's hearing. So even, let's say he got the discovery and it was very favorable to him, like it didn't turn out that it was heroin or whatever, there's still in the four corners of the affidavit enough for probable cause for the issuing judge to, having reviewed the mix of allegations, find a fair probability that it would be evidence of illegal drug trafficking in the apartment. And that's what the harmless error analysis takes into account. Are there many cases that talk about Rule 16 versus Frank's? Do some say, you know, Frank's has this showing requirement, which I think we're all quite familiar with. I think we're a little less familiar with Rule 16. Are there cases that say, well, we realize Frank's has this requirement, the defendant should meet this burden prima facie before you do something, hey, but don't worry about that in Rule 16. And Rule 16 applies to everything, including search warrants. Do we have that? Is that something that's been said? I don't have a case to give you on that. Well, maybe the other side has that case, which is not a bad time. Thank you. Thank you. I suspect I'm going to run out of time pretty quickly. Do you have that case? Do you understand what I was just saying? So what's a little puzzling, I think most of us are quite a bit more familiar with Frank's requests. We get that pretty regularly. I think Rule 16, a little less so. I'm trying to figure out how they interact. Under the broad reading of Rule 16, it applies to suppression motions. Frank's are classically suppression motions. Does this work in a way that you don't need a prima facie case, as you do under Frank's? You just say, hey, this could help me in my case somehow, some way, i.e. my suppression motion. So I don't have to come up with a theory. I think some of the questions I'm hearing are actually identifying what I would consider a catch-22 for someone like Mr. Sanders. I'm making a different point. I'm trying to ask you, has any court tried to draw the line between what the defendant has to do for Frank's versus what the defendant has to do under Rule 16? When Rule 16 is being used, just like Frank's, to get at a suppression situation where maybe the defendant was lying or engaged in misconduct. I'm not aware of a case that is making that distinction. But I would agree with, I can't remember who said it, but the idea that Rule 16 allows you to discover information that is relevant to the defense. And a Frank's hearing is something that you would request in the process of trying to represent your client, to try to have evidence suppressed. As Judge Strantz said, it's the way you would shift the quantum of proof more than any other. So below when you raised Rule 16, did you do it under a little ruminant I, 2, or 3? Specifically with regard to the drug evidence that I asked to view, that was the little three I's, I believe. But more generally, the idea of... No, no, no, I'm asking, did you bring it under the other two below? I argued it under Rule 16, I believe, more generally. And also just under the idea that due process requires that this sort of evidence be disclosed. Because we have a situation... That's back to Frank's. That's back to Frank's. I mean, it's... You don't have any constitutional right to discovery in a criminal case in the first place. Like Supreme Court says that. Right. So you have Rule 16 is what you have.  My argument is that in the sense that Mr. Sanders' liberty has been deprived based on a search that occurred of this residence, Mr. Sanders should be entitled to review the evidence that led to that search warrant. I mean, to me that is a more general constitutional argument than something that is limited to just the rule. But I agree with Judge Kuplage. I think the rule itself is broad enough to encompass the evidence that we've requested below, before the district court. I didn't really see an argument in your brief that the denial of this request or whatever it was for this information affected your client's substantial rights. I believe I've addressed that. Of course, now I've written. And, you know, real quick, kind of give me the gist of that now. Well, generally, similar to the argument I just made, I think that when we're talking about a situation where someone has been deprived of their liberty, and it is based on evidence that the government admits that they have, I believe that a defendant is entitled to be able to review that in order to determine if the search that led to his arrest, to his prosecution, was valid. And, again, I want to try to respond to a couple of other questions, or a couple of other issues that were brought up, just for clarification. Before you do that, can I ask you about the district court? Because the district court, in its opinion, understood you to be asking for this information specifically for a Franks hearing, right? Yes, and I think that there was some confusion in that opinion. If we go back and look at your briefing, we'll see that. That way you can move on. I can just go look at your briefing. Fair enough, yes, Your Honor. I would just note that we never requested the CI's identity. That was not the purpose of the supplemental discovery request. The government characterized our request in that way throughout, I think, because the case law supports them in refusing to disclose information when the CI's identity could be at issue. That's why we requested that the district court review that information in camera to be able to determine whether or not that concern was even legitimate, and he didn't do so. I think that's an abuse of discretion. I think that is something that could warrant reversal of this case, regardless of the search issues with the warrant. So at the district court, under Rule 16, you asked for the drugs? What were you asking for? I asked for reports, evidence related to the controlled bias. I asked to review the drug evidence that was seized during the controlled bias. I asked for all of that. And the district judge simply denied it and did not give you an in-camera hearing even? We had no hearing. He did not review the materials in camera. He essentially just accepted the government's representation that this information couldn't be disclosed without revealing the identity of the confidential informant. And you didn't want that? That was not something that was at issue in this case at all. I mean, to be completely fair, I believe my client actually knew who the confidential informant was. So the theory was not the unethical confidential informant? No. The theory was that the surveillance, one of the one and a half instances Judge Bush has mentioned, was only conducted by an officer that did have a reputation for pushing the boundaries, doing things that were unethical. So this is based on my own experience with other cases. So we wanted to make sure, we wanted to be able to confirm that what's in the affidavit, that surveillance to and from Yellowstone Parkway on that one occasion actually occurred in the way that it is represented in the search warrant affidavit. Well, we've been busy asking you questions. You said you had a couple other great ideas. I mean, if they're truly eureka, we want to hear them. I don't know that I can do that for you. Sure, I wanted to because we did kind of pepper you and I want to give you a chance to say one or two things. Sure. I would just come back. I thought that when I came in here today we'd be talking about good faith a lot more than we have. I would just note that. Well, you didn't start. I know. Yes, you're right. Of course, partially my fault. I thought you all would direct me that way. I would just note that when we're talking about an objectively reasonable idea of what a reasonably trained officer would do, we have to consider it in terms of the world that we live in now. We look at the affidavit here. It's clear to me that this officer didn't bother to consult any of the databases that are available even to just private citizens to determine who lives where, which car is registered to which house, whose utilities are in what name. None of that occurred here. I don't think in the context of this case and in other cases where we're going to search private residences, I don't think a reasonably trained officer would execute a warrant but not include any of that information at a private residence without doing more investigation. I just don't think that it gets to the point where any objectively reasonable officer would do that. And I think that... So would this further the purposes of the exclusionary rule to exclude this evidence here? I think it would. Because you say other officers would do more. Right. The exclusionary rule is really meant to deter illegal conduct. Absolutely agree. I don't see you arguing that. You could have done more. Sure. You can always do more. Well, I would argue the search is unlawful. So I mean, I think that that's maybe one distinction. It doesn't mean that the good faith exception doesn't apply.  And the good faith exception is there to allow the evidence to come in unless the balancing is such that it's going to deter the police officers in the future. You argue it's a bare bones affidavit here, and therefore that's the exception you put your hat on. But bare bones affidavits are conclusory affidavits without support of facts that basically just say the conclusions that the officers want. Here we have all sorts of facts here, and we're disputing whether or not it's enough for probable cause. But, I mean, isn't this the case or the kind of case that good faith is meant to apply to? Actually, did you really want us to ask that question? No. Fair enough. I think that suppression in this case does serve the purpose of protecting the court. What way? Because I think what we're dealing with here is drug investigators who are engaged in these kinds of investigations all the time. They're trying to build cases. They're trying to move on. And what we have here is a warrant for a private residence that I think was completed in a reckless or a grossly negligent way. And I think that it's the kind of thing that will recur. It will continue to happen. And we can imagine scenarios where it's going to become a lot more problematic than what occurred in this case. We could have people who are totally not connected to the crime having their private areas invaded by government agents without real justification. So, counsel, you haven't used this word, but one of the things that you're alluding to is potentially swatting. Someone who knows a drug dealer who maybe rides dirty all the time but also likes to hang out at his grandmother's house, and it's known that he hangs out at his grandmother's house, and so you see him come to and from his grandmother's house. But he rides dirty, and he's got drugs in his car, and so officers see him go to and fro. Officers have no information about the reliability of this particular person, but they're able to corroborate that, yes, we see him at this address all of the time. And so all of a sudden they're at grandma's house executing a search warrant, and it turns out that this is just someone who's always at the ready and keeps his product in his car. Well, couldn't agree more, Your Honor. I believe that is correct. I mean, that is one of the scenarios I'm talking about where if we're acting as if suppression in this case makes no difference, I think this is why we have to suppress the evidence in this case and not rely on the good faith exception because we're in a situation where, well, we're in a situation where really there's nothing been established that at this particular residence we're going to find any evidence of drug activity. Well, I guess the question becomes then, though, is that too far-fetched? You know, when you say a reasonable officer would not act on that information, is it too far-fetched such that we can say that, well, but he had a good faith belief that this was okay? I think it would depend on the facts of that particular case involving the swatting scenario. But back to the, I mean, we're dealing in a hypothetical here. This will be the last one. Had that happened at Grandma's house, and he doesn't live at Grandma's house, he doesn't have standing to challenge the search of Grandma's house in the first place. Right, and that was one point I wanted to make earlier. The government indicated, and I understand why, that she assumed that that standing argument was made below. It was not. No one has ever presented the idea that Sanders had no standing. Because it was his residence, so he had standing. I'm not sure that the records show that it's his. I'm not exactly sure that the record establishes one way or another. Thank you, Mr. Beck. I really appreciate your argument. Thank you as well, Ms. Vickery. And Mr. Beck, I see that you're a court-appointed counsel. You did a terrific job, including by getting quite a bit of extra time on behalf of your client. So he's really lucky, and so are we. It's a real service to the justice system. So thanks to you for excellent arguments and briefs. We really appreciate it. The case will be submitted.